# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| Laurina Kim Bukovics,<br><br>                Debtor. | Case No. 15 B 38069<br>Chapter 7 |
| Laurina Kim Bukovics,<br><br>                Debtor,<br><br>   v.<br><br>Educational Credit Management Corporation,<br><br>               Defendant. | Adv. No. 17 A 186 |

## AMENDED COMPLAINT

Laurina Kim Bukovics ("Debtor"), for her Amended Complaint, states as follows:

### Procedural Background and Jurisdiction

1.    The Debtor commenced this Chapter 7 case on November 9, 2015.

2.    The case was initially closed on March 7, 2016, at which time the Debtor did not receive a discharge because she had not submitted Official Form 423, Certification About A Financial Management Course.

3.    On September 20, 2016 the Debtor, having completed the financial management course, moved to reopen the case so that the Debtor could file the Official Form 423 and obtain a discharge. That motion was denied because of lack of evidence of service of the Debtor's motion.

4.    On April 10, 2017, the Debtor moved to reopen her bankruptcy case for the purpose of filing an adversary against Navient to determine the dischargeability of certain student loans. The Court reopened the case on April 20, 2017 and on that date granted the

1

Debtor a discharge. The discharge order was in the Court's standard form and did not discharge the Debtor of student loan debts. The main bankruptcy case was closed on April 25, 2017.

5. The Debtor's pro se adversary complaint was docketed as of April 10, 2017. The pro se complaint initially identified Navient as the defendant. The Educational Credit Management Corporation (the "Defendant") was subsequently allowed to intervene as the proper Defendant.

6. The pro se complaint challenged the amount of student loan debt asserted by the Defendant and asserted that the student debt was dischargeable because it placed an undue hardship of the Debtor.

7. The Defendant filed an answer to the pro se complaint on May 31, 2017.

8. On April 28, 2017, the Defendant filed a proof of claim in this case asserting that, on account of several student loans, it held a claim against the Debtor for $68,702.01. A copy of the Defendant's proof of claim is Exhibit A to this Amended Complaint.

9. The Court has jurisdiction over this matter under 28 U.S.C. 1334(b) as this case concerns matters that arise under 11 U.S.C. §502(b) (allowance of claims) and §523(8) (discharge of student loan debt).

**Background and Facts**

10. The Debtor attended the University of Wisconsin at Madison from 1985 to 1990. The Debtor received a Bachelors degree in 1990.

11. While a student at the University of Wisconsin, the Debtor received several loans to cover tuition and other expenses including living expenses. The Debtor received the following loans:

2

1373647.v1

| Loan type | School | Date | Amount |
|---|---|---|---|
| SLS | Wisconsin | 11/16/1989 | $ 1,100.00 |
| SLS | Wisconsin | 11/13/1989 | $ 670.00 |
| Stafford sub | Wisconsin | 6/8/1990 | $ 911.00 |
| Stafford sub | Wisconsin | 6/4/1990 | $ 1,679.00 |
| Stafford sub | Wisconsin | 8/10/1989 | $ 2,514.00 |
| Stafford sub | Wisconsin | 5/18/1989 | $ 1,675.00 |
| Stafford sub | Wisconsin | 8/26/1988 | $ 1,590.00 |
| Stafford sub | Wisconsin | 6/7/1988 | $ 270.00 |
| Stafford sub | Wisconsin | 5/26/1988 | $ 1,300.00 |
| Stafford sub | Wisconsin | 10/5/1987 | $ 2,177.00 |
| Stafford sub | Wisconsin | 10/16/1986 | $ 700.00 |
| **TOTAL** | | | $ 14,586.00 |

12. From 1990 through 1997, the Debtor made payments on the above loans. However, because of missed payments, which were caused by lack of income, and the compounding of interest that accrued at greater than nine percent, by 1997 the balance under the loans exceeded the original amount borrowed.

13. In 1997 the above loans were consolidated into a single loan. The consoldiated loan, however, included two Perkins loans (also knows as National Direct Student Loans) that the Debtor did not receive.

14. From 1997 through 2015 the Debtor made numerous payments under the consolidated loan. However, during this period the Debtor was not able to make each scheduled loan payment.

3

1373647.v1

15. The Debtor's inability to make every loan payment was casued in part by interruptions in her employment. The Debtor was an employee of Near North National Title but lost that employment in 2004 when cut backs were made upon the criminal conviction of the company's president. After a period of unemployment, the Debtor found work at LandAmerica. That employment ended when that company went bankrupt in 2008. Because the Debtor's work expereince was all in the financial services industry, she was not able to find replacement employment during the peak years of the financial crises.

16. The Debtor suffers from a hereditary mental illness that occasionally manifests itself as extreme anxiousness, depression, and blackouts. Because of this illness, the Debtor requires frequent medical attention, incurs large uninsured medical expenses, and has been hospitalized several times, most recently in late 2016.

17. The Debtor's illness has not prevented her from working full-time in the financial payment industry as a proposal manager, and over the decades it has not prevented her from paying over $26,000 on account of her student loans, nearly twice the original principal amount borrowed. The illness does prevent Debtor from expanding her work load or responsibilities in a way that might materially increase her pay. It also prevents her from holding a second job. The Debtor also expects that her illness will prevent her from working full time much beyond her 60th birthday (the Debtor is presently 50).

18. In addition to the work gaps described above, the Debtor's illness has caused her to experience gaps in employment in the 27 years since she graduated from the University of Wisconsin. During these gaps, some of which occurred at a time when the Debtor was the single parent of a child living at home who was dependent on the Debtor for support, the Debtor missed payments on her student loans. Because the loans accrued and compounded interest at interest

4

rates between 8 and 10 percent, any gap in the making of payments quickly resulted in ever larger amounts of interest being added to the total student loan debt.

19. By 2017, the balance owed under the consolidated loan, as claimed by the Defendant, exceeded $70,000, nearly five times the original amount of the loans even though the Debtor had already paid more than $26,000 towards the loans.

20. The amount claimed by the Defendant as owed for the student loans (including the consolidated loan) is far in excess of what the Plainitff believes is owed.  As stated above, it appears that the balance includes two Perkin loans, for an original loan amount of $6,310, that the Debtor in fact did not receive.  The Debtor's belief is substantied by the Defendant's (or its predecessor's) own documentation.  With interest accruing at eight percent, the amount owed on those never-receveid loans is now nearly $54,000.  The Debtor has not been able to obtain from the Defendant a report showing the month-by-month buildup of the loan balance.

21. In an addition, the repayment of the loan would place an undue burden on the Debtor.  The Debtor believes that the Defendant now insists that monthly payments of in excess of $700 must be made towards the loan, in the absence of which the Defendant through administrative garnishments could seize upwards of 15 percent of Debtor's gross wages, or approximately $750 a month.

22. The Debtor has no savings and no right to receive payments from a retirement or pension plan and, as set forth below, lacks the income to save money for retirement.  The Debtor does not own a home or a business.  Other than Social Security (upwards of 15 percent of which could be, by administrative process, applied to the loan), the Debtor is likely to have no income upon retirement.

23. The Debtor presently earns a monthly salary of about $5,000 gross, or $3,600 net of taxes and health insurance. The Debtor's net pay is entirely consumed by the followng expenses:

   i. Rent (including parking) of $2,300 a month (the Debtor presently pays rent of $1,000 to a friend. That arrangement is expected to soon end as the friend plans to sell the building).

   ii. Utilities and telephone of $300 a month.

   iii. Unisured medical expenses of the Debtor and her daughter that average $350 a month;

   iv. Automobile insurance, maintenance and gas of $200 a month;

   v. Local transportation of $50 a month;

   vi. Food, clothing, sundry home and personal care expenses that average $260 a month;

   vii. Miscellaneous of $140 a month (including support for daughter).

24. Based on the foregoing, the Debtor lacks the resources to service her student loan in the amount claimed by the Defendant. If her net salary were to be reduced by garnishments for the student loans, she would not have the funds to pay for her basic living and family expenses.

## COUNT I

### Objection to Claim

25. The Debtor re-incorporates allegations 1 through 24 above.

26. On information and belief, the amount claimed by the Defendant as owed by the Debtor for her student loans is overstated. The overstatement was, in large part, caused by the inclusion of two Perkins loans in the consolidated loan that the Debtor did not recevie. The Debtor asks for an accounting of the amount allegedly owed, showing the month-to-month application of payments and accrued interest.

6

27. In addition, not all of the proceeds of the loans received by the Debtor were for direct educational purposes. Some of the proceeds were used to pay living expenses incurred at the time the Debtor was a student.

WHEREFORE, the Debtor objects to the proof of claim of the Defendant for the reason that the claim is overstated in amount and for the reason it includes amounts, and interest and fees thereon, that were not lent for educational purposes.

## COUNT II

### Discharge of Student Loans for Undue Hardship

28. The Debtor re-incorporates allegations 1 through 27 above.

29. Repayment of the Debtor's student loans, in the amount claimed by the Defendant or anywhere near that amount, would prevent the Debtor from maintaining a miminal standard of living. At eight percent interest, monthly payments of about $850 would be required over the next 10 years (through the Debtor's expected work life). That level of payments would require a significant reduction of current living expenses and would preclude the Debtor from saving for retirement.

28. The Debtor's inability to pay the loan in the amount demanded by the Defendant is likely to persist. Because of her illness, the Debtor is unable to commit the time and energy necessary to advance in her profession, or to take a second job. Moreover, the Debtor does not have enough career years left to warrant an investment of time or money in a more lucrative field.

29. The Debtor has in good faith tried to repay her student loans, and in fact has repaid about $26,000, nearly twice the amount borrowed.

WHEREFORE, the Debtor prays that the Court determine that the repayment of the Debtor's student loans would place an undue hardship on the Debtor and that, therefore, the Debtor is discharged of the student loan debt claimed by the Defendant.

Dated: October __, 2017.                      /s/ William J. Barrett
                                              William J. Barrett
                                              BARACK FERRAZZANO KIRSCHBAUM &
                                              NAGELBERG LLP
                                              200 West Madison St., Suite 3900
                                              Chicago, IL 60606
                                              (T)     (312) 629-5172
                                              (F)     (312) 984-3150
                                              (E)     william.barrett@bfkn.com

8

1373647.v1