United States Bankruptcy Court
Northern District of Illinois
Eastern Division

| | |
|---|---|
| In re:<br><br>Laurina Kim Bukovics,<br><br>　　　　　　　　Debtor. | Chapter 7<br>Bankruptcy No. 15 B 38069<br>Honorable Judge Jack B. Schmetterer |
| Laurina Kim Bukovics,<br><br>　　　　　　　　Plaintiff<br><br>　　v.<br><br>Navient,<br><br>　　　　　　　　Defendant. | Adversary No. 17 A 186 |

## OPINION ON PLAINTIFF'S MOTION FOR RELIEF FROM JUDGMENT AND AMENDMENTS TO FINDINGS OF FACT AND CONCLUSIONS OF LAW [DKT. NO. 44]

Debtor Laurina Kim Bukovics ("Plaintiff") sued to seek declaration of non-dischargeability as to her student loan with Navient. Educational Credit Management Corporation intervened as the proper defendant in this adversary on May 10, 2017.

The Court held a trial and later entered extensive Findings of Fact and Conclusions of Law [Dkt. No. 40] which held, under Seventh Circuit precedent applying the *Brunner* test, that her situation did not qualify her to discharge student loans. Judgment was entered accordingly. [Dkt. No. 42.]

Based on new evidence Plaintiff moved under 11 U.S.C. § 523(a)(8) to reopen the Judgment entered against her herein on July 26, 2018 that held her debt to Educational Credit Management Corporation ("Defendant") to be non-dischargeable. This new evidence included the loss of her job since the earlier trial, her inability through extensive effort to find new employment, and her current lack of income.

Trial was held in the reopened proceeding on those issues on February 14, 2019 during which Plaintiff testified and both parties presented evidence. The trial was continued to March 14, 2019 for final argument and to determine if either of Plaintiff's pending interviews would become job offers.

For reasons stated below, the Judge declines to rule yet on Plaintiff's Motion. Ruling on the Motion will be held in abeyance pending Plaintiff's further efforts to secure employment within the next four months.

## BACKGROUND FACTS

Plaintiff filed her instant Chapter 7 bankruptcy petition *pro se* on November 9, 2015, but the case was closed without a discharge being entered because Plaintiff failed to file her Certification About a Financial Management Court. The case was reopened on Plaintiff's Motion in April of 2017, at which point she filed the instant adversary proceeding against Navient (ECMC replaced Navient as the correct defendant shortly thereafter) seeking to discharge her student loans because they presented an undue hardship to her. 11 U.S.C. § 523(a)(8).

As found in previously entered Findings of Fact and Conclusions of Law, Plaintiff is an Illinois resident, born in 1967, attended University of Wisconsin in 1985, and graduated with a Bachelor's Degree in Communications in August of 1990. In order to finance her education, Plaintiff took out several student loans which were consolidated in April of 1997. Plaintiff intermittently made some payments on her student loans, applied for deferrals, or missed payments over the course of the ensuing 11 years. As of January 16, 2018, Defendant calculated that Plaintiff's loan balance was $72,674.72 (for a more thorough discussion of Plaintiff's loan history, *see In re Bukovics*, 587 B.R. 695, 699-700 (Bankr. N.D. Ill. 2018)).

Trial was originally held on May 7 and May 8, 2018. Plaintiff testified that she worked at home as a Marketing Specialist for Government Payment Service, Inc. and earned $63,036 in 2017 (including a one-time bonus of $5,000). She further testified during that May trial that the continuation of her employment was uncertain.

It was originally held that Plaintiff had failed to satisfy two of the three prongs of the applicable *Brunner* test because she had failed adequately to minimize her expenses and failed to show that her inability to meet her financial obligations were caused by some additional circumstances that were likely to persist into the future. The Court did find and hold that Plaintiff had made a good faith effort to repay her loans.

Plaintiff's $63,036 per year salary in 2017 was a significant factor in the Court's previous ruling. However, on June 24, 2018, the uncertainty of Plaintiff's employment with Government Payment Service became a reality. Plaintiff terminated her employment (at trial, Plaintiff

testified that she did this in lieu of being laid off or fired) and received two weeks of severance pay. Plaintiff then filed the instant Motion on August 9, 2018.

In her Motion, Plaintiff stated that she had begun the process of applying for new work and would present evidence as to her income and expenses if granted a new hearing. In her Amended Submission of Report on Current Income, Plaintiff reported that she had been covering her expenses through cash gifts and loans from friends and that she was being allowed to live temporarily in the condominium of a friend without paying rent, though she was expected to take on boarders through the online Airbnb service. Plaintiff became retroactively eligible for Medicaid on July 1, 2018, but receives no other governmental assistance. In her Submission of Additional Facts, Plaintiff also reiterated her previous arguments that the bankruptcy filing coupled with her name being associated with the unscrupulous business practices of her former employer, LandAmerica Financial Group, have made finding work considerably more difficult. Additionally, Plaintiff asserted that she may have had trouble finding a job because of her age.

In Response to Plaintiff's arguments, Defendant argued that Plaintiff's basis for alteration of or relief from the judgment is unclear. Despite evidence Plaintiff submitted, Defendant argues that Plaintiff's job search has been limited in its scope to her preferred field of work, that Plaintiff has not presented evidence that she will be unable to obtain any employment in the future, and that Plaintiff has not shown that she is minimizing her expenses. Additionally, Defendant argues that Plaintiff left her job voluntarily and potentially jeopardized her eligibility for unemployment support. Moreover, Defendant states that Plaintiff's assertion that her age contributed to her inability to find work is unsubstantiated.

In Plaintiff's Reply, she argues that her job search has been extensive, including retail positions, and that no legal precedent requires her to accept a position paying minimum wage. She argues that it is not her burden to show that there is *no* conceivable employment for her in the future. Plaintiff acknowledges that she quit her previous position but reiterated that she felt her skills were being misused and that she was about to be fired or laid off imminently because the job was soon to be terminated. Finally, Plaintiff states that the purpose of a new hearing would not be to relitigate the entire case, but rather to show that, based on new evidence available, specifically Plaintiff's current unemployment, that she has minimized her expenses and the circumstances which render her unable to pay her student loans are likely to persist.

Plaintiff's Motion was granted in part; the Judgment was opened and a hearing set for new evidence to be presented. The Court also granted in part Plaintiff's Motion to File a Document Under Seal as to her Exhibit A, which consisted of a list of jobs she had applied to and the status of those applications.

The parties presented evidence at the reopened hearing on February 14, 2019. Plaintiff testified about her attempts to satisfy the *Brunner* test adopted in the Seventh Circuit and made applicable to 11 U.S.C. § 523(a)(8). *In re Roberson*, 999 F.2d 1132, 1135 (7th Cir. 1993) (citing *Brunner v. New York State Higher Educ. Servs. Corp.*, 831 F.2d 395 (2d Cir. 1987)). First, Plaintiff testified as to her maximization of earnings and minimization of expenses. Given that Plaintiff did not at the time have a job, a large portion of her testimony consisted of Plaintiff detailing her efforts to find employment. To that effect, Plaintiff and her attorney detailed the more than 100 jobs she has applied to since June of 2018. [Dkt. No. 52, Exh. A.] These jobs included marketing positions like the one she held at Government Payment Services as well as retail and seasonal work, and other business, marketing or managerial roles. Plaintiff's job search had resulted in a few interviews, including two second interviews which Plaintiff was then still waiting to hear back about.

Additionally, Plaintiff testified as to the minimization of her expenses, indicating that she had stopped paying for an auto loan on one of the vehicles she and her daughter used (and the auto insurance needed for that vehicle as well), she had put off dental work which she could not afford without insurance from her employer, and that she no longer paid rent, instead temporarily living for free in a friend's condominium and seeking boarders through Airbnb. [Dkt. No. 67.]

Upon cross examination, Defendant's attorney focused on two issues. First, she asked Plaintiff about certain expenses that appeared in her banking records, including charges for SiriusXM Satellite Radio, iTunes, Spotify, and Uber. These charges, argued Defendant, tended to show that Plaintiff had not minimized her expenses and that she continued to use disposable income on frivolous and unnecessary services and purchases. Second, Defendant's attorney argued that the jobs Plaintiff applied for were very narrow in scope. While a few of the positions were retail oriented and did not require the kind of expertise that Plaintiff's degree or years of experience had conferred, Defendant's attorney asserted that her search was not broad enough in that regard and that Plaintiff should have been looking for more low paying jobs that would have at least allowed her to make some payments toward her student loans. She argued that

4

unemployment or underemployment, especially in a debtor that can work, is not a sign of undue hardship.

The Court continued the trial until March 14, 2019 to determine if Plaintiff had been offered either of the jobs as to which she had testified that second interviews were pending. Neither of those opportunities materialized and oral closing argument was heard with both parties reiterating arguments they had made in their briefs.

## JURISDICTION AND VENUE

Subject matter jurisdiction lies under 28 U.S.C. § 1334. The district court may refer cases arising under title 11 to a bankruptcy judge under 28 U.S.C. § 157, and this matter is referred here by District Court Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. Venue lies under 28 U.S.C. § 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## DISCUSSION

### I. Federal Rule of Bankruptcy Procedure 9023

Pursuant to Fed. R. Civ. P. 59, applicable in bankruptcy Fed. R. Bankr. P. 9023, a court has discretion in whether to entertain a Rule 59(e) motion to alter or amend a judgment. FED R. BANKR. P. 9023 ("A motion for a new trial or to alter or amend a judgment shall be filed, and a court may on its own order a new trial, no later than 14 days after entry of judgment."); *LB Credit Corp. v. Resolution Trust Corp.*, 49 F.3d 1263, 1267 (7th Cir. 1995). Rule 9023 motions allow movants to bring manifest errors of law and fact to the Court's attention so they may be corrected, or to present new evidence unavailable at the time of trial. *Moro v. Shell Oil Co.*, 91 F.3d 872, 876 (7th Cir. 1996). The decision to grant or deny such a motion is within a judge's discretion. *In re Prince*, 85 F.3d 314, 324 (7th Cir. 1996). Motions to alter or amend should not be used to relitigate old matters or present cases under new legal theories. *King v. Cooke*, 26 F.3d 720, 726 (7th Cir. 1994), cert. denied, 514 U.S. 103 (1995).

The instant Motion clearly falls within the purview of Rule 9023. Plaintiff is not attempting to relitigate old fact issues or present new legal theories. Plaintiff has lost her job, a new event that occurred after the original trial. A judgment under 11 U.S.C. § 523(a)(8) may be reopened so that new material facts can be considered. *In re Roberson*, 999 F.3d 1132, 1137-38 (7th Cir. 1993).

Therefore, the issue now pending is whether, in light of new evidence presented at the February 14 and March 14, 2019 hearings, the Court should amend its previously entered Findings of Fact and Conclusions of Law and amend its earlier Judgment so that Plaintiff's student loan debt could be discharged.

## II. Plaintiff's Discharge Under 11 U.S.C. § 523(a)(8)

The purpose of the discharge provided by the Bankruptcy Code is to provide honest, but unfortunate debtors with a financial, "fresh start." *In re. Chambers*, 348 F.3d 650, 653 (7th Cir. 2003). However, not all debts are included in the general bankruptcy discharge. The Bankruptcy Code lists specific, limited circumstances in which debts are excluded from the general discharge in 11 U.S.C. § 523. Student loans are one such type of debt and are presumptively non-dischargeable. 11 U.S.C. § 523(a)(8); *In re Hanson*, 397 F.3d 482, 484 (7th Cir. 2005). A debtor can overcome this presumption of non-dischargeability with a showing that excepting the student loans from the general discharge would impose an undue hardship on the debtor and his or her dependents. *Hanson*, 397 F.3d at 484.

In evaluating whether non-dischargeability of student loans imposes an undue hardship upon a debtor, the Seventh Circuit has adopted the Second Circuit's *Brunner* test. *Roberson*, 999 F.2d at 1135 (citing *Brunner v. New York State Higher Educ. Servs. Corp.*, 831 F.2d 395 (2d Cir. 1987)). Under the *Brunner* test, a debtor must establish three elements to properly claim undue hardship: (1) the debtor cannot, based on current income and expenses, maintain a "minimal" standard of living for him or herself and his or her dependents if required to repay the student loans, (2) that additional circumstances exist which indicate that this state of affairs is likely to persist for a significant portion of the repayment period, and (3) that the debtor has made a good faith effort to repay the loans. *Id.* Although the Bankruptcy Code itself does not refer to "undue hardship," courts have interpreted the statutory language of 11 U.S.C. § 523(a)(8) as suggesting that the hardship must be more than the "garden-variety" that is present in all bankruptcy filings. *O'Hearn v. Educ. Credit Mgmt. Corp. (In re O'Hearn)*, 339 F.3d 559, 564 (7th Cir. 2003). Debtors bear the burden of proving each of the elements of the *Brunner* test. *Goulet v. Educ. Credit Mgmt. Corp.*, 284 F.3d 773, 777 (7th Cir. 2002) (citing *Grogan v. Garner*, 498 U.S. 279, 291 (1991)). If a debtor fails to establish one of these elements, she has failed to meet her burden and the court need not inquire further. *Id.*

6

### A. Minimal Standard of Living

The first prong the *Brunner* test requires the Court to analyze whether the debtor in question could maintain a minimal standard of living if he or she is required to pay back her debts. The debtor does not need to live a life of poverty to pay back his or her student loans, but the debtor is required to make, "major personal and financial sacrifices and to live within a restricted budget." *Larson v. United States (In re Larson)*, 426 B.R. 782, 789 (Bankr. N.D. Ill. 2010) (quoting *Clark v. U.S. Dep't of Educ. (In re Clark)*, 341 B.R. 238, 249 (Bankr. N.D. Ill. 2006)). Of particular relevance is the question of whether the debtor is maximizing his or her personal income, while minimizing current living expenses. *Id.*

Plaintiff is not currently working, so the question of whether she is maximizing her personal income is largely tied to her pursuit of new employment. Plaintiff is certainly in good faith attempting to find employment; it is unrebutted Plaintiff has applied to over 100 jobs, both in and out of her area of expertise. Several of her applications resulted in job interviews, and at least two resulted in second interviews. Although no employment has materialized from her efforts, it is evident that Plaintiff has expended a great deal of effort to find a job.

Defendant's argument to the contrary is one of scope. Essentially, Defendant asserts that Plaintiff's search is too narrow and that most jobs she has applied to fall squarely within her area of expertise. If that were so, it would run contrary the Seventh Circuit's prescription that debtors "cast a wide net," while attempting to maximize their income. *O'Hearn v. Educ. Credit Mgmt. Corp. (In re O'Hearn)*, 339 F.3d 559, 566 (7th Cir. 2003) ("[I]t is not uncommon for individuals to take jobs not to their liking in order to pay off their student loans, or for that matter to meet all sorts of other financial obligations."). Defendant asks that Plaintiff present evidence that she will *never* be able to obtain any employment in the future. Defendant also raises the question of whether Plaintiff could have stayed at her previous position longer, rather than quitting in anticipation that the job was to be ended.

Defendant's analysis ignores the reality of Plaintiff's situation. The majority of the 100 or so jobs that Plaintiff has applied for did fall within her area of expertise, but Exhibit A (filed under seal) to her Amended Submission of Current Income indicates that Plaintiff has applied to several retail positions of the nature Defendant believes she should be looking for. None of those applications – not the jobs Plaintiff is explicitly qualified for, nor the retail positions – have borne any fruit to this point. Nor is it inexcusable for Plaintiff to have resigned from her previous

position. Whether or not her employer actually indicated that the position was set to be eliminated soon, Plaintiff testified at trial that the position itself was eliminated shortly after she resigned. Thus, while debtors are required to cast wide nets to find employment and underemployment or unemployment are not excuses for able-bodied debtors, no authority requires a debtor to take *any* job that comes along. It does not appear that Plaintiff was attempting to derive some benefit by leaving her job before it was eliminated and seeking discharge of her student loans; on the contrary, the fact that she immediately began applying for work in her field indicates that she did not attempt to "game" the bankruptcy system. It does therefore appear that Plaintiff has attempted to maximize her income in this case.

Moreover, Plaintiff has presented compelling evidence that she has minimized her income, contrary to Defendant's assertions. Defendant argues that some of the expenses found in Plaintiff's bank records continue to be frivolous and unnecessary. These include charges for entertainment services, uses of ride share apps like Uber, and delivery of food through apps like GrubHub. While Defendant may be correct that some of those charges were not necessary services to Plaintiff, the bankruptcy code does not require a debtor to live a life of total poverty to pay his or her debts. The question is whether the debtor has made, "major personal and financial sacrifices . . . to live within a restricted budget." *Larson v. United States (In re Larson)*, 426 B.R. 782, 789 (Bankr. N.D. Ill. 2010) (quoting *Clark v. U.S. Dep't of Educ. (In re Clark)*, 341 B.R. 238, 249 (Bankr. N.D. Ill. 2006)).

Plaintiff has given up one of the vehicles from her previous case, she has put off having dental worked performed, and she is living off short-term loans from her friends and family. Plaintiff has moved out of her previous apartment and is now living temporarily in the condominium of one of these friends. While she cannot currently afford to pay rent, she is expected to take on boarders and short-term rentals through Airbnb. The actions taken by Plaintiff paint the picture of a debtor who has significantly trimmed her budget. Although she may not have minimized her budget to the point where she is living a destitute life, she has certainly minimized her expenses a great deal since judgment was entered against her in this proceeding. Plaintiff has proven by presenting a preponderance of evidence that she has met her burden that she would be unable to maintain more than a minimal standard of living if required to repay her student loan. Plaintiff has therefore satisfied the first prong of the *Brunner* test.

**B. Additional Circumstances Likely to Persist**

The second prong of the *Brunner* test asks whether additional circumstances show that a debtor's inability to pay is likely to persist for a significant portion of the repayment period. *Tetzlaff v. Educ. Credit Mgmt. Corp.*, 794 F.3d 756, 759 (7th Cir. 2015) (citations omitted). The debtor's "certainty of hopelessness" in prospects of other employment must be shown likely to exist into the future for a significant portion of the repayment period, rather than just being a current inability to make payments. *Goulet v. Educ. Credit Mgmt. Corp.*, 284 F.3d 773, 777 (7th Cir.2002) (quoting *Roberson*, 999 F.2d at 1135-36). In order to demonstrate that a "certainty of hopelessness" is likely to persist, a debtor must concretely identify his or her particular problems and explain how those problems will impair his or her ability to work in the future. *In re Cavender*, 2017 WL 8218841 (Bankr. N.D. Ill. Nov. 27, 2017) (citing *In re Vargas*, No. 10 C 4022, 2010 WL 5395142, *5 (C.D. Ill. Dec. 23, 2010)). This standard calls on a reviewing court to have evidence projecting the future probability of employment and it is very difficult to meet. *Carter v. Sallie Mae (In re Carter)*, 517 B.R. 870, 876 (Bankr. N.D. Ill. 2014). Generally, only debtors who are severely disabled, have psychiatric issues, have no usable job skills, or have very limited education are able to show that their inability to pay for the entire future period is a, "matter of fact rather than speculation." *Id.* In this case, none of those concrete conditions were established, so the probability of future employment must be predicted from evidence currently of record. Unfortunately, no crystal ball is available to help. It would be helpful if the law permitted entry of a conditional judgment of discharge subject to alteration if employment is obtained, but no such judgment is authorized by the Bankruptcy Code.

Defendant argues that because Plaintiff has not shown any evidence of age-based discrimination or discrimination based on her association with her previous employer, LandAmerica, her narrow job search since judgment was entered against her in June of 2018 does not prove a "certainty of hopelessness" that is likely to persist for much of the repayment period.

It is true that Plaintiff failed to present evidence that age-based discrimination or discrimination on the basis of Plaintiff's association with LandAmerica are causes of her unemployment woes. In fact, the evidence does not clearly indicate reasons why she cannot find work.

9

However, Plaintiff has applied to over 100 positions in the intervening 10 months since she left her previous job. It is not clear why she is having difficulty finding employment, but Defendant argues that simply because Plaintiff has not been able to find work thus far does not mean that she will never be able to secure new employment in any form.

However, with the benefit of additional data as to longer efforts to search for employment Plaintiff may be able to prove that her straitened circumstances are likely to persist indefinitely. In *Krieger v. Educ. Credit Mgmt. Corp.*, 713 F.3d 882, 885 (7th Cir. 2013), a Seventh Circuit panel examined the circumstances of the debtor and determined, based on her diligent job search and difficulty finding work, that she was eligible for discharge of her student loans. The debtor in *Krieger* is in several ways similar to Plaintiff in this case. Krieger was a healthy, 53-year-old woman living with her elderly mother in rural Illinois. *Krieger*, 713 F.3d at 885. She was a graduate of St. Charles Community College with a degree in accounting, and later a graduate of Webster University where she earned a paralegal certificate and a second degree in legal studies. *Id.* Krieger had dropped out of the workforce for a period of time to raise her family, but upon reentering the workforce and applying to approximately 200 jobs over a ten-year period, could not find any employment where she lived. *Id.* As she lacked the capacity to travel to work or move her residence, Krieger could not look beyond the rural area in which she lived. *Id.* Indeed, the bankruptcy court in that case described the situation by writing that, "[n]ever has the Court seen such utter futility be the result of a debtor's job search efforts." *Id.* (quoting *In re Krieger*, No. 11-80144, 2012 WL 1155687 (Bankr. C.D. Ill. Apr. 5, 2012), *rev'd sub nom. Educ. Credit Mgmt. Corp. v. Krieger*, 482 B.R. 238 (C.D. Ill. 2012), *rev'd and remanded*, 713 F.3d 882 (7th Cir. 2013)).

Plaintiff's circumstances are not quite the same. Unlike debtor in *Krieger*, she does not live in a rural area with an aged relative and no ability to travel; Plaintiff lives alone in an area where many jobs are available and, while she has testified that her vehicle is old and unreliable, she can currently travel for work interviews by driving or by public transportation. Moreover, Plaintiff has been more active than the debtor in *Krieger* in applying for work. Over the course of ten years, the debtor in *Krieger* applied to approximately 200 jobs, whereas Plaintiff has applied to over 100 jobs in approximately ten months. Her search has been just a fruitless as that of the debtor in *Krieger*.

Defendant is correct when it says that job searches frequently take more time than Plaintiff has thus far invested. In *Krieger* the Seventh Circuit panel determined the debtor having spent ten years applying without finding work was enough to determine that the circumstances were likely to persist for a significant period of the repayment period. In Plaintiff's case, with jobs available more abundantly near her residence than in the rural area described in *Krieger*, the amount of time needed to determine whether her state of unemployment is likely to persist is far shorter. If Plaintiff were unable to find meaningful employment within the next four months, that could really help satisfy the "certainty of hopelessness" standard articulated by the Seventh Circuit. Moreover, it might help Plaintiff to identify the particular problems she faces and how those problems have impaired her ability to work. *In re Cavender*, 2017 WL 8218841 (Bankr. N.D. Ill. Nov. 27, 2017) (citing *In re Vargas*, No. 10 C 4022, 2010 WL 5395142, *5 (C.D. Ill. Dec. 23, 2010)).

The second prong of the *Brunner* test essentially asks that the court use its crystal ball to peer into the future. *O'Hearn*, 339 F.3d at 564. "Unfortunately, a crystal ball is not a standard item issued by the Administrative Office in Washington, D.C. to aid the Court." *In re Carter*, 29 B.R. 228, 231 (Bankr. N.D. Ohio 1983). There are circumstances in which math and science may assist courts in determining the likelihood of future events. But, such predictive analysis requires a sufficient dataset in order to predict the future. "[I]n practice, you must gather a *sufficient* amount of data, based upon your intended purpose or need." JAMES D. MILLER & RUI MIGUEL FORTE, MASTERING PREDICTIVE ANALYTICS WITH R, 398 (Amey Varangoankar, et al. eds., 2nd ed. 2017). In the absence of sufficient data showing that debtor cannot find employment and without a scientific method, a judge must be relied on to review the sad history of this debtor and make an informed judgment about the debtor's future.

As discussed above, the Seventh Circuit has suggested that a judgment under 11 U.S.C. § 523(a)(8) may be reopened so that new material facts can be considered. *Roberson*, 999 F.3d at 1137-38. Alternatively, courts may hold rulings in abeyance while waiting on more facts to develop. *Landis v. North American Co.*, 299 U.S. 248, 254 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."). No Seventh Circuit authority appears to prevent this course of action. Indeed, even if application of the *Brunner* test did require an immediate ruling, "[i]t is important not to allow judicial

11

glosses, such as the language in *Roberson* or *Brunner*, to supersede the statute itself." *Krieger*, 713 F.3d at 884. Nothing in either 11 U.S.C. 523(a)(8) or Fed. R. Bankr. P. 9023 requires an immediate ruling.

Therefore, rather than rule on Plaintiff's Motion now, the Court will hold ruling on the Motion in abeyance until October 1, 2019. At that point, the answer will be clearer. If Plaintiff is able to find gainful employment such that she is able to make student loan payments, the Motion will be denied. However, if Plaintiff still has been unable to find work that allows her to live beyond the minimal standard prescribed by the *Brunner* test, or she is unable to find any work at all, it may be clear at that time, following a total of twelve months of job hunting, that Plaintiff's situation is hopeless and the judgment may be altered or amended to reflect that she is entitled to a discharge of her student loans.

### C. Good Faith Efforts to Repay

The final prong of the *Brunner* test asks whether debtor has demonstrated that he or she has "made good faith efforts to repay the loans." *Roberson*, 999 F.2d at 1135. "[U]ndue hardship encompasses a notion that the debtor may not willfully or negligently cause his own default, but rather his condition must result from 'factors beyond his reasonable control.' *Id.* (quoting COMM'N ON THE BANKRUPTCY LAWS OF THE UNITED STATES, REPORT, H.R. DOC. NO. 93-137, pt. II at 140, n. 15 (1st Sess. 1973)).

The previously entered Findings of Fact and Conclusions of Law detailed Plaintiff's extensive payment history, despite her forbearances, indicated a good faith attempt to pay back her student loan. In fact, the Court found that Plaintiff had already paid back more than she initially owed in principal, though accrued interest meant that she now owes more than what she first borrowed. New evidence did not dispute the original finding that Plaintiff was in good faith and there is no need to reexamine that finding based on the Motion to Reopen or responses thereto.

### CONCLUSION

For reasons articulated above, it is clear that Plaintiff now satisfies both the first and third prongs of the *Brunner* test. It is unclear at this time whether Plaintiff can satisfy the second prong of the *Brunner* test (that additional circumstances are present that evince her future inability to pay which are likely to persist for a significant portion of the repayment period). Therefore, ruling on this Motion to Reopen and Alter or Amend Judgment will be held in abeyance until

October 1, 2019. At that time, if Plaintiff can demonstrate further persistent efforts to seek employment, but remains unemployed or employed such that she cannot maintain a minimal standard of living while making student loan payments, the Court will then consider granting the Motion and may alter or amend the Findings of Fact and Conclusions of Law to indicate that Plaintiff has satisfied all three prongs of the *Brunner* test. Plaintiff could thereby win discharge of her student loans.

    A separate order will be entered concurrently herewith holding ruling on this Motion in abeyance and setting future hearing on this matter on Tuesday, June 30, 2020 at 1:30 p.m. in Courtroom 682.

Dated this ___ day of May, 2019

MAY -8 2019

ENTER:

Jack B. Schmetterer
United States Bankruptcy Judge

13

17 AP 00186
In re Laurina Kim Bukovics v. Navient
Updated 8/10/18

# CERTIFICATE OF SERVICE

I, Dorothy Clay, certify that on May 8, 2019, I caused to be served copies of the foregoing document to the following by electronic service through the Court's CM/ECF system or regular U.S. mail:

*Dorothy Clay*
Judicial Assistant/Deputy Clerk

## Electronic Service through CM/ECF System

Saskia Nora Bryan
Latimer LeVay Fyock LLC
55 W. Monroe St. Ste. 1100
Chicago, IL 60603
(312) - 4228000
sbryan@llflegal.com
*Counsel for Defendant*

William J. Barrett
Barack Ferrazzano Kirschbaum Nagelberg
200 West Madison Street
Suite 3900
Chicago, IL 60606
312 629-5170
312 984-3150 (fax)
william.barrett@bfkn.com
*Counsel for Plaintiff*

## First Class Mail

Navient
P.O. Box 9500
Wilkes-Barre, PA 18773-9500

Laurina Kim Bukovics
818 W. Webster
#1E
Chicago, IL 60614